### ILLINOIS TOOL WORKS INC., Plaintiff,

v.

### HYBRID CONVERSIONS, INC., d/b/a March Labs, and DC–Hybrids, Inc., Defendants.

**Civil Action No. 2:10–CV–00129–WCO.**

United States District Court, N.D. Georgia, Gainesville Division.

Aug. 29, 2011.

Bradley L. Cohn, J. Michael Monahan, Daniel I. Hwang, Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP, Chicago, IL, W. Pitts Carr, Emory L. Palmer, Carr & Palmer, Atlanta, GA, for Plaintiff.

## ORDER

WILLIAM C. O'KELLEY, Senior District Judge.

The captioned case is before the court for consideration of plaintiff's "Motion for Final Judgment" [44].

On June 16, 2011, plaintiff filed a motion seeking the entry of default against the two defendants remaining in this action: DC–Hybrids, Inc. ("DC–Hybrids") and Hybrid Conversions, Inc. ("Hybrid Conversions").

Two steps must be completed to obtain a default judgment pursuant to Federal Rule of Civil Procedure 55(b). Initially, default must be entered by the clerk when a party that has been properly served fails "to plead or otherwise defend." FED.R.CIV.P. 55(a).[1] The clerk entered default on April 19, 2011, against DC–Hybrids. Later, on May 6, 2011, the court entered an order striking the pleadings of Hybrid Conversions because of that corporate defendant's failure to obtain counsel as ordered. The court also directed the clerk to enter default against Hybrid Conversions.

■ Once default has been entered, a party must apply to either the clerk or the court for the entry of a default judgment.

---

1. Although Jeremy March ("March") and David Gibson ("Gibson"), the principals of Hybrid Conversions and DC–Hybrids, respectively, appeared at the default judgment hearing and claimed that they had never been served in this action, the record clearly belies this contention. March and Gibson may not have been served individually, but they are no longer parties to this case. Instead, the only remaining defendants are corporate defendants, and the record clearly reflects that service was properly effected on each corporate defendant.

If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk can enter a default judgment in that amount. FED.R.CIV.P. 55(b)(1). In all other cases, however, the party must apply to the court for the entry of a default judgment. Because plaintiff requested a default judgment for the maximum amount of statutory damages under the Lanham Act, the court decided that a hearing would be appropriate. On August 22, 2011, the court held this hearing.

■ After the entry of default, the facts in the plaintiff's complaint are deemed to be admitted. *See Nishimatsu Const. Co. v. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) ("[D]efendant by his default, admits the plaintiff's well-pleaded allegations of fact"). In its complaint, plaintiff asserted that defendants infringed its trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), and 1125(a). Additionally, plaintiff claimed that defendants engaged in deceptive trade practices and used fraudulent trademarks in violation of Georgia law. *See* O.C.G.A. § 10–1–372 (deceptive trade practices); O.C.G.A. § 23–2–55 (fraudulent trademarks). According to the complaint, defendants sold counterfeit merchandise bearing trademarks registered to plaintiff and contained in packaging copied from plaintiff's legitimate products. These marks included plaintiff's federally registered "The Little Torch" and "Smith Equipment" marks. The specific merchandise was plaintiff's "The Little Torch" product, which is a small welding torch system. Defendants allegedly sold this counterfeit merchandise through the online internet site eBay.

During the default judgment hearing and a prior injunction hearing, the court heard un-rebutted testimony concerning defendants' illegal activity. March claimed that Hybrid Conversions received the counterfeit items from a variety of sources, including warehouses within the United States and shipments from a supplier in China. Gibson's company, DC–Hybrids, apparently had no contact with any of the suppliers but instead served as a distributor for Hybrid Conversions. Gibson claimed that he did not know where March obtained the counterfeits.

Additional testimony revealed that plaintiff became aware of the counterfeits after customers who had purchased counterfeit items contacted plaintiff's customer service division. Although the counterfeit torches looked very similar to the genuine products, there were a number of differences. The fittings of the counterfeit torches did not work with the standard connectors and hoses. Plaintiff's witnesses also testified about a number of design flaws in the counterfeit goods that made them a safety hazard. Some of the counterfeit torches leaked gas, which could cause fires or other safety risks. Indeed, plaintiff reported that it received several complaints from customers that the counterfeit torches had started fires.

In its motion for default judgment, plaintiff requests two forms of relief. Plaintiff asks for the court to enter an injunction preventing defendants from manufacturing, advertising, selling, and distributing counterfeit products bearing plaintiff's federally registered trademarks. Under 15 U.S.C. § 1116, a United States court may grant an injunction, "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."

Additionally, plaintiff seeks a statutory damages award of $4,000,000.00. When a trademark registrant establishes that a defendant has used a counterfeit mark "in connection with the sale, offering for sale or distribution of goods or services, the [trademark registrant] may elect, at any time before final judgment is rendered by the trial court" to recover statutory damages instead of actual damages. 15 U.S.C. § 1117(c). A statutory damages amount of $1,000.00 to $200,000.00 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, may be awarded as the court considers just. *Id.* at § 1117(c)(1). If the court finds that the infringement was willful, however, the maximum statutory damages ceiling increases to $2,000,000.00 per counterfeit mark per type of goods or services sold, offered for sale, or distributed. *Id.* at § 1117(c)(2). Plaintiff contends that defendants acted willfully when they infringed the trademarks at issue and seeks a maximum statutory damages award of $2,000,000.00 for each mark.

■ The court finds that defendants infringed both of plaintiff's federally-registered trademarks, "The Little Torch" mark (Reg. No. 2,330,604) and the "Smith Equipment" mark (Reg. No. 2,386,759). An injunction pursuant to 15 U.S.C. § 1116 is thus proper. Defendants will be enjoined from manufacturing, advertising, selling, and distributing counterfeit products bearing plaintiff's federally-registered trademarks, "The Little Torch" (Reg. No. 2,330,604) and "Smith Equipment" (Reg. No. 2,386,759).

■ Additionally, the court finds that defendants willfully infringed these two trademarks. Defendants listed counterfeit products bearing each of these marks for sale on eBay. Although defendants claimed that they had no knowledge that the items were counterfeit, the facts indicate otherwise. Both defendants claimed in the advertisements accompanying their eBay postings that the torches offered for sale were "half price." Thus, defendants knew the customary price for the torches made by plaintiff and actively undercut that price. This shows that defendants acted willfully because there would be no need to discount the torches so extensively if they were legitimate products. Moreover, defendants apparently never attempted to verify that this merchandise was sold by plaintiff or by one of plaintiff's authorized distributors. When customers complained to defendants about defects in the counterfeits, defendants never contacted plaintiff to seek assistance. Therefore, it is clear that defendants' activity was willful.

■ Since defendants acted willfully, the court may impose a statutory damages award of up to $2,000,000.00 for each mark infringed. "Generally, statutory damages [under the Lanham Act] are awarded when no actual damages are proven, or actual damages and profits are difficult or impossible to calculate." *Cable/Home Comm. Corp. v. Network Prods., Inc.,* 902 F.2d 829, 851 (11th Cir.1990). The court has wide discretion in determining an award of statutory damages. *Id.* at 853. Two factors that warrant special consideration are the willfulness of a defendant's conduct and the deterrent value of any sanction imposed. *Id.* Other factors that courts have considered include the expenses saved and profits reaped by the infringer and the revenues lost by the copyright holder due to the infringement. *Nintendo v. Ketchum,* 830 F.Supp. 1443, 1445 (M.D.Fla.1993).

■ Although plaintiff requested the maximum statutory damages amount for

each mark, this is not a case where a maximum damages award is appropriate. A statutory maximum damages award should be reserved for trademark infringement that is particularly egregious, involves large amounts of counterfeit goods, or is otherwise exceptional. *See, e.g., Microsoft Corp. v. Gordon,* No. 1:06–CV–2934–WSD, 2007 WL 1545216 (N.D.Ga. May 24, 2007) ("The Court believes that statutory damage maximums should be reserved for cases of notable scope or particularly egregious conduct."). Although egregious, this case involved only a relatively small number of counterfeit sales. The only evidence available showed that defendants sold approximately 417 counterfeit items at a price of $85 per item, amounting to total sales of $35,455.00. The court finds the small amount of counterfeit sales in this case does not justify a maximum statutory damages award.

The court does find, however, that a significant statutory damages award is warranted. As noted, defendants' infringement was willful and blatant. They sold products that copied the appearance and packaging of plaintiff's products. They advertised these products as authentic merchandise for half the typical list price. Moreover, and most importantly, defendants marketed and sold counterfeit items that posed a risk to public safety. Plaintiff presented un-contested evidence that the counterfeit torches contained several dangerous defects, including the potential for gas leaks that could cause fires. Infringing a trademark is egregious and should be severely punished, but it is even more contemptible to infringe upon a trademark with goods that are potentially dangerous to the public. Not only does the risk inherent in such goods pose an even greater threat to the goodwill associated with the trademark registrant's mark, it also threatens the public with physical harm. Therefore, the court finds that a large statutory damages amount is appropriate.

The court will impose separate statutory damages awards against each defendant. It is necessary to differentiate between the defendants because the conduct of Hybrid Conversions, who actually obtained the counterfeit goods, is more egregious than the conduct of DC–Hybrids, who simply sold some of the counterfeit goods. Therefore, the court will impose a statutory damages award against Hybrid Conversions in the total amount of $1,000,000.00, which is the sum of a $500,000.00 damages award for each mark infringed. The court will impose a statutory damages award against DC–Hybrids in the amount of $500,000.00, which is the sum of a $250,000.00 damages award for each mark infringed.

For the foregoing reasons, plaintiff's "Motion for Final Judgment" [44] is hereby **GRANTED** against all defendants. The clerk is hereby **DIRECTED** to enter a default judgment in favor of the plaintiff and against defendant Hybrid Conversions, Inc., in the amount of $1,000,000.00. The clerk is hereby **DIRECTED** to enter a default judgment in favor of the plaintiff and against defendant DC–Hybrids, Inc., in the amount of $500,000.00. Defendant Hybrid Conversions, Inc., and defendant DC–Hybrids, Inc., their officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with any of these persons or entities are hereby **ENJOINED** from manufacturing, advertising, selling, and distributing counterfeit products bearing plaintiff's federally-registered trademarks, "The Little Torch" (Reg. No. 2,330,604) and "Smith Equipment" (Reg. No. 2,386,759).